RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/11/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LAN XUAN DANG | DOCKET NO. 1:13-CV-32; SEC. P |
| VERSUS | JUDGE DRELL |
| ASK-CARLSON, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Before the Court is the *pro se* petition of Lan Xuan Dang, filed pursuant to 28 U.S.C. §2241. Petitioner is an inmate in the custody of the United States Bureau of Prisons (BOP), presently incarcerated at the United States Penitentiary in Pollock, Louisiana (USP-P). He claims that he should be transferred to Canada pursuant to 18 U.S.C. §4100, et seq.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Petitioner's Allegations*

On December 10, 2007, Petitioner, a native and citizen of Canada, was convicted in the United States District Court for the Eastern District of Canada of: (1) conspiracy to import 138,000 ecstasy pills, in violation of 21 U.S.C. §963; (2) importing 60,000 ecstasy pills, in violation of 21 U.S.C. §952; and (3) conspiracy to launder $190,000 in U.S. currency, in violation of 18 U.S.C. §1965(h). *U.S. v. Lan Dang*, 2:06-cr-690 (ED Pa.). He was sentenced to a term of imprisonment of 480 months. *Id. at Doc. #351*.

Petitioner filed an application for a transfer to Canada, his

native country, to serve out his sentence. On August 15, 2012, the Department of Justice denied Petitioner's request for transfer. The Chief of the International Prisoner Transfer Unit stated that the request for transfer was denied due to the seriousness of the offence and serious law enforcement concerns. [Doc. #1-2, p.4] Petitioner was notified that he could reapply in two years. On August 22, 2012, Canada Correctional Service wrote to Petitioner stating that, because the U.S. denied the application for transfer, it was terminating the processing of Petitioner's application. [Doc. #1-2, p.10]

### Law and Analysis

### I.   Treaty, Convention, and Act

In 1978, the United States and Canada entered into a bilateral treaty based upon the two countries' mutual desire "to enable Offenders, with their consent, to serve sentences of imprisonment or parole or supervision in the country of which they are citizens, thereby facilitating their successful reintegration into society." *Treaty Between the United States of America and Canada on the Execution of Penal Sentences*, July 19, 1978, T.I.A.S. No. 9552, 30 U.S.T. 6263, 1978 WL 182456 ("the Treaty"), Preamble. The Treaty provides, in pertinent part, that every transfer "shall be commenced by a written application submitted by the Offender to the authority of the Sending State. **<u>If the authority of the Sending State approves</u>**, it will transmit the application, together with its

approval, through diplomatic channels to the authority of the Receiving State." Treaty, Art. III, ¶3. ***If the Receiving State concurs***, "it will so inform the Sending State and initiate procedures to effectuate the transfer of the Offender at its own expense. If it does not concur, it will promptly advise the authority of the Sending State." Treaty, Art. III, ¶ 4. (Emphasis supplied).

On March 21, 1983, the United States became a signatory to a multi-lateral treaty entitled the Convention on the Transfer of Sentenced Persons, T.I.A.S. No. 10824, Europ. T.S. No. 112 ("the Convention"). The Convention was ratified by President Reagan on July 17, 1984 and became effective on July 1, 1985. Convention, T.I.A.S. No. 10824, 35 U.S.T. 2867, 1983 WL 472046. The Convention provides in pertinent part as follows:

> "A sentenced person may be transferred under this Convention only on the following conditions:
>
> ...
>
> f. *if the sentencing and administering States agree to the transfer.*"

Convention, Art. III, ¶ 1(f). (Emphasis supplied).

Under the Transfer of Offenders to or from Foreign Countries Act, 18 U.S.C. §4100 et seq. ("the Act"), pursuant to a treaty, the Attorney General may "transfer offenders under a sentence of imprisonment ... to the foreign countries of which they are citizens or nationals" and "make regulations for the proper

3

implementation of such treaties ... and to ... implement [the Act]." 18 U.S.C. §§ 4102(3),(4). Significantly, the Act applies "only when a treaty providing for such a transfer is in force." 18 U.S.C. § 4100(a) (emphasis supplied). The Act authorizes the Attorney General, acting on behalf of the United States, to transfer offenders in his discretion. The Act authorizes the Attorney General "to delegate the authority conferred by this chapter to officers of the Department of Justice." See 18 U.S.C. § 4102(11).

I.  *Agreement of Parties*

First, pursuant to the Treaty, the "sending state" must approve the transfer, and the receiving state must concur. Here, the "sending state" - the United States of America, did not approve. Thus, the "receiving state" - Canada - terminated the processing of the application. There must be agreement by both countries, which is absent in this case. The U.S., through the Department of Justice, has unfettered discretion in deciding whether to approve a request for transfer. See Bagguley v. Bush, 953 F.2d 660, 662 (D.C.Cir. 1991); Coleman v. Reno, 91 F.Supp.2d 130, 132 (D.D.C. 2000). Because of this discretion, Petitioner has no protected liberty interest in a transfer.

III. *Standing*

Moreover, Petitioner lacks standing to challenge the denial of his transfer request. "To satisfy the Article III case or

4

controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1984); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976). Standing is a judicially created doctrine that is an essential part of the case-or-controversy requirement of Article III.  To have standing, a plaintiff must show three elements: (1) an "injury in fact" — an invasion of a *legally protected interest* which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)(internal citations and quotations omitted).  Petitioner can not show the first element because he does not have a legally protected interest in an international transfer.

Also, with respect to treaties, there is a presumption that "treaties do not create privately enforceable rights in the absence of express language to the contrary," even when the treaty may benefit specific individuals.  Medellin v. Texas, 552 U.S. 491 (2008). Nothing in either the Act, the Treaty, or the Convention

contains express language creating an individually enforceable right. As discussed above, both the Treaty and the Convention provide that transfers will occur ***only when the sending and receiving countries agree*** to the transfer. Since Petitioner's request for a transfer was denied by the Attorney General, acting through the DOJ's International Prisoner Transfer Unit, neither the Treaty's nor the Convention's conditions for transfer were met; and, the Act does not give prisoners any right to be transferred independent of the treaty. See Yosef v. Killian, 646 F.Supp.2d 499, 507 (E.D.N.Y. 2009); Bagguley v. Bush, 953 F.2d 660, 662 (D.C.Cir.1991) (no protected liberty interest in a transfer under the Act or Convention); Scalise v. Thornburgh, 891 F.2d 640, 649 (7th Cir. 1989)(the Act does not give rise to a "liberty interest in prisoners seeking international prisoner transfers"); United States ex rel. Rickard v. Sternes, 149 F.Supp.2d 437, 451 (N.D.Ill. 2001)("The Convention imparts no individual right for a foreign national prisoner to be transferred to his home country."); Coleman v. Reno, 91 F.Supp.2d 130, 132 (D.D.C. 2000)(dismissing suit to compel Attorney General to accept custody of United States citizen incarcerated in Canada for failure to state a claim).

Like the Petitioners in the cases discussed above, Petitioner has no "legally protected" individual right to a transfer under the Act, the Treaty, or the Convention. Accordingly, he lacks standing to bring this habeas petition. See Lujan, 504 U.S. at 560-61.

Because he lacks standing, the petition must be dismissed.

*Conclusion*

For the forgoing reasons, **IT IS RECOMMENDED** that **Lan Dang's** petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, on this 9th day of June, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE